COMMISSIONER OF INTERNAL REVENUE v. WILSON.

No. 7745.

Circuit Court of Appeals, Seventh Circuit.

Jan. 31, 1942.

[26] See authorities cited in footnote 1.

[27] See authorities cited in footnote 2.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Bureau of Internal Revenue, and Edward H. Hammond, both of Washington, D. C., for petitioner.

Calvin F. Selfridge, of Chicago, Ill., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Petitioner asks this court to review a decision of the Board of Tax Appeals absolving respondent from a claimed deficiency in income tax for the years 1934 and 1935.

On December 21, 1933, respondent created a trust for the benefit of his son to continue for not more than two years. The son was married and at that time was 28 years of age and had shortly prior thereto entered the employ of his father's law firm. This trust was created for two years because respondent did not wish to set up a trust of a permanent character until the son had demonstrated to his father's satisfaction that the income would not impair his ambition or usefulness in his work. It provided that the trustees were to hold the corpus, collect the income and, after paying expenses, distribute the ordinary income to the son. The capital gains were to be accumulated and upon the termination of the trust, the entire principal was to be transferred to respondent as his own property, and if he was not then living, the corpus and capital gains were to be paid to the executors of his estate.

During 1934 the entire net income of the trust was paid to the son. During 1935 the trustees paid the net ordinary income to the son but retained the capital gains, which they reported as income of the trust and paid a tax thereon. December 21, 1935, upon termination of the trust, the corpus was transferred to respondent together with the capital gains.

On June 25, 1935, the respondent created a trust for the benefit of his daughter Cynthia, then 26 years of age, and Beverly Compton, whom she married on July 6, 1935. The trustees were members of the law firm of which the respondent was the senior member. Under this trust, the net income was to be paid to the beneficiaries during their lifetime. Cynthia was in a financially independent position to marry because her grandfather, during his lifetime, had given her stocks which provided an income of more than $5,000 a year, which respondent thought was adequate to take care of a young married couple "just starting out." Shortly after the creation of the trust, Cynthia issued written instructions to the trustees to pay the entire net income to her husband. The net income of the trust for 1935 amounted to $7,110.10, including $4,939.89 capital gains derived from the sale of certain bonds constituting the corpus. The trustees paid the ordinary income to Compton and re-

tained the capital gains, which they reported as income of the trust.

The trust indenture provided that it should terminate on the death of Cynthia unless she should die leaving issue surviving her, in which case the trust should continue in force and terminate when her youngest child attained the age of twenty years. At the time of the hearing before the Board, Cynthia Compton had two children, one and three years old. The trust indenture also provided that the trust should in any and the latest event terminate upon the death of respondent, settlor, and upon the termination of the trust, under any of the conditions above named, the entire principal of the trust estate should be transferred to the respondent.

Respondent, in his income tax returns for 1934 and 1935, did not include therein either the ordinary income or capital gains of the two trusts. The petitioner, as Commissioner of Internal Revenue, determined that the income of these two trusts, both ordinary and capital, was taxable to the respondent and found a deficiency in taxes against the respondent. On petition to review the Commissioner's determination, the Board held that the capital gain of the trust for the benefit of respondent's son was taxable to respondent, but that the ordinary income of that trust was not taxable to respondent. It also held that neither the ordinary income nor the capital gain of the trust for the benefit of Cynthia Compton was taxable to respondent.

The petitioner contends that the ordinary income of the trust for the benefit of the son is taxable to the respondent under § 22(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 22(a), and that the capital gain of the trust for the benefit of the daughter and her husband is taxable to respondent under § 167(a) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 167(a) (1).

Before proceeding to a discussion of the cases claimed by petitioner to be applicable and controlling, it is well that we discuss respondent's contention that the question of ownership of the corpus of the trusts is a question of fact to be determined by the Board and not subject to review, except on the question of law, whether there is evidence to sustain the finding.

 Where the ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact,

it is subject to judicial review. Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32. Commissioner v. Buck, 2 Cir., 120 F.2d 775, involved claimed deficiencies in Buck's income tax. The Commissioner argued that Buck was taxable on the income of the trust under either § 22(a) or §§ 166 and 167 of the Revenue Acts of 1932 and 1934. The Board of Tax Appeals found against the Commissioner. On review in the Circuit Court of Appeals, it was insisted that the court could not substitute its judgment for the finding of the Board. The court rejected the contention and said (120 F.2d at page 779): " * * * to a large extent the Board's decision involved merely 'an interpretation of a written document, and this court is free to construe the writing for itself.' "

In our case, just as in the Buck case, the facts are not in dispute. The only evidence bearing upon the question of whether the respondent remained the owner of the corpus of the trusts was the trust indentures, and irrespective of whether the Board made a finding on the question of whether the respondent remained the owner of the corpus of the trusts, the ultimate question of ownership, in our opinion, is one of law and open for determination here. We observe that the court in Commissioner v. Goulder, 6 Cir., 123 F.2d 686, reached a contrary conclusion.

In support of his contention that the ordinary income of the trusts are taxable to the respondent, petitioner cites the case of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, in which the court makes it clear that the settlor's liability under § 22(a) for taxes on the income of a trust which he has created depends upon whether the settlor has retained or derives sufficient economic benefits of ownership to be still treated as the owner, and holds that the head of a family cannot affect his tax liability by allocating part of his income to his wife through the medium of a short term trust over the corpus of which he retains control. The court said (309 U.S. at page 335, 60 S.Ct. at page 557, 84 L. Ed. 788): "We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after

this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property."

In construing § 22(a) [1] the courts are not so much concerned with the refinements of title as with the actual command over the income which is taxed, Harrison v. Schaffner, 312 U.S. 579, 581, 61 S.Ct. 759, 85 L.Ed. 1055, nor is the reach of the income tax law to be delimited by the technical refinements or mere formalism, United States v. Joliet & Chicago Railroad Co., 62 S.Ct. 442, 86 L.Ed. ——, decided January 19, 1942. In considering taxability and non-taxability no one fact is normally decisive but all considerations and circumstances are relevant to the question of ownership, Helvering v. Clifford, 309 U.S. 331, 336, 60 S.Ct. 554, 84 L.Ed. 788.

In our case a reading of the trust for the benefit of the son discloses that the economic benefits of ownership retained or derived by the settlor are (1) he parted with no substantial interest in the property other than the specified payments of income, Harrison v. Schaffner, supra, 312 U.S. 583, 61 S.Ct. 759, 85 L.Ed. 1055, and retained the right to have transferred to him the corpus not later than two years after the creation of the trust,—the equivalent of ownership, and (2) the indirect benefit derived by the settlor from the fact that his son received the income therefrom. Helvering v. Clifford, supra. It is clear that children of the settlor are members of the "family group" within the meaning of those words as used in the Clifford case, e. g., Penn v. Commissioner, 8 Cir., 109 F.2d 954; Cox v. Commissioner, 10 Cir., 110 F.2d 934; and Helvering v. Hormel, 312 U.S. 552, 61 S.Ct. 719, 85 L. Ed. 1037, and the fact that the son is an adult is immaterial, Commissioner v. Berolzheimer, 2 Cir., 116 F.2d 628.

Importance is attributed to the fact that the trust is for a short term. In the Clifford case, the trust was to terminate in five years or upon the earlier death of the settlor or of the beneficiary; in the Hormel case, at the expiration of three years, or upon the death of either the settlor or the beneficiary, whichever occurred first. In both cases the corpus, upon termination of the trust, was to revert to the settlor if living, or to his estate if he was not living. See, also, Harrison v. Schaffner, supra; Commissioner v. Central National Bank, 6 Cir., 119 F.2d 470; Commissioner v. Buck, supra; Commissioner v. Barbour, 2 Cir., 122 F.2d 165; Helvering v. Elias, 2 Cir., 122 F.2d 171. Applying the principles thus enunciated, it seems clear that the ordinary income of the trust for the benefit of the son is taxable to the respondent, since he has equally enjoyed the fruits of his investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. Helvering v. Horst, 311 U.S. 112, 117, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655.

We now consider petitioner's contention that the capital gain from the sale of certain securities comprising the corpus of the trust created for the benefit of Cynthia and Beverly Compton is taxable to respondent. The pertinent provision of § 167(a) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 167(a) (1) states: "(a) Where any part of the income of a trust— (1) is * * * held or accumulated for future distribution to the grantor; * * * then such part of the income of the trust shall be included in computing the net income of the grantor."

The record discloses that certain bonds were delivered to the trustees when the trust was created and were held by the trustees until their sale in October, 1935. The trustees kept the bonds in a custodian's account in their names at a bank, and separate bank accounts and complete books of account were kept by them. In 1935 the trustees considered selling the bonds and sought respondent's advice in the matter. These bonds were sold, netting a capital gain, and the proceeds were reinvested in other securities, issued in the names of the trustees.

Under no circumstances was the capital gain to be paid to any beneficiary of the trust, but pursuant to an express provision of the trust indenture, the capital gain became a part of the corpus to be paid to the

---

[1] " 'Gross income' includes gains, profits, and income derived from * * * interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

grantor upon the termination of the trust if he was living, and if he was not then living, it reverted to his estate and passed under his will to be administered by his executors in the same manner as if the grantor had died owning the same.

In support of the decision of the Board respondent relies on Commissioner v. Betts, 123 F.2d 534, decided by this court on November 26, 1941. It is true in that case the capital gains were to be added to the corpus, but they were accumulated for the beneficiaries of the trust; they were not being held for future distribution to the grantor. In our case the beneficiaries have no right or interest whatever in the capital gain. Under such circumstances it seems clear that the case of Graff v. Commissioner, 7 Cir., 117 F.2d 247, is controlling. In that case the capital gains were not distributed to the beneficiary, but were added to the corpus to be paid to the grantor upon the death of his wife, if he was then living, and, if he was not then living, the trustees were to divide the corpus and pay same to the grantor's children. We held that the capital gains were income accumulated for future distribution to the grantor within the meaning of § 167(a) (1).

The order of the Board of Tax Appeals is reversed and the proceeding remanded with instructions to compute the income taxable to the respondent and determine the deficiency in accordance with the views expressed in this opinion.