## COMMISSIONER OF INTERNAL REVENUE v. WOOLLEY.

### No. 367.

Circuit Court of Appeals, Second Circuit.

July 30, 1941.

Writ of Certiorari Denied Dec. 15, 1941.

See 62 S.Ct. 365, 86 L.Ed. ——.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Harry Marselli, Sp. Assts. to Atty. Gen., for the petitioner, Commissioner of Internal Revenue.

Elden McFarland, of Washington, D. C., (Ellwood W. Kemp, Jr., and G. A. Donohue, both of New York City, of counsel), for respondent Daniel P. Woolley.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question before us is whether the income, accruing after June 19, 1934, from a trust created by the respondent, Daniel P. Woolley, on February 10, 1933, should

be taxed as part of his income for the year 1934. The Board decided that it was properly returned as the income of the trust rather than of the grantor. We think this was error and hold that the Commissioner rightly taxed the income against the respondent.

The taxpayer placed certain securities in trust by deed dated February 10, 1933, in which he appointed his wife, Ethel Y. Woolley, trustee for the following uses and purposes:

"To take control and management thereof and to invest and reinvest and keep the same invested and to receive the income therefrom, and, after paying the reasonable and proper expenses of the trust, to pay and distribute the principal thereof and the income therefrom as follows:

"(a) During the life of the Settlor, to pay over and distribute the whole or any part of the net income thereof annually, in such amounts and proportions as Ethel Y. Woolley, the said Trustee hereunder may, in her sole, absolute and uncontrolled discretion, determine, to and among one or more of the following, in accordance with their respective needs, of which she shall be the sole judge, to wit:

"The Settlor,

"Robert W. Gardner, Jr., of Asheville, North Carolina, infant nephew of the Settlor,

"Ethel Y. Woolley, wife of the Settlor, and to accumulate the balance of such net income, if any, for the benefit of such of the above named persons, who may be infants at the time of such accumulation, and in such proportions among them, as the said Trustee may in her sole discretion determine. All income so accumulated shall be paid over to the person for whose benefit it is accumulated upon his attaining the age of twenty-one (21) years but, if such person shall die before attaining the age of twenty-one (21) years, then such income accumulated for his benefit shall thereupon be paid over to those persons who under the laws of the State of New York in effect at the time of the death of such person, would be entitled to the property of such person had he died intestate.

"(b) Upon the death of the Settlor, the trust herein created shall terminate and the principal amount, together with any additions thereto, shall be paid over to the estate of the Settlor."

The trustee was empowered to retain any property in the trust which was transferred to her, but if the settlor should notify her to sell or lease any such property and to purchase any property out of funds of the trust she was to comply with his directions. The settlor reserved the right to transfer additional investments or property to the trustee that he might wish to substitute for property then constituting the principal of the trust. It was provided in the trust deed that the trustee should not be under any obligation to pay off a loan for which a part of the principal of the trust was pledged. It was also provided that the trust might be "revoked in whole or in part by the Settlor by an instrument in writing executed after December 31, 1933" and that he might at any time by an instrument in writing extend the period during which the trust might not be revoked. It was also provided that on the death or resignation of Ethel Y. Woolley he might appoint one Kemp as successor-trustee with the same powers, and if Kemp should not accept an appointment, he might appoint a trustee in Kemp's stead.

In pursuance of the power reserved in the trust instrument the settlor, on June 19, 1934, executed a revocation of the trust which effected a termination as of January 1, 1937, and on June 19, 1934, he agreed with his wife to waive and renounce any right he might have to revoke the trust prior to January 1, 1937. As a result of these acts the trust became limited on June 19, 1934, to a duration of less than three years.

The trustee, Ethel Y. Woolley, made no distribution of income during 1934, which was accumulated and not paid or credited to any beneficiary in that year. In 1935 she distributed $5,000 of the income to herself and part of it to her husband. During one year she paid out of the trust income for the schooling and other expenses of the nephew Gardner, whose expenses she and her husband had always paid, and whom they adopted in 1939. He became of age in 1940. The income realized between January 1 and June 19, 1934, amounting to $10,632.50 was reported by him in his individual return, because he had a power of revocation during that period. The income from June 19 to December 31, 1934, amounting to $11,926.71, was reported by the trustee as income of the

trust. The Commissioner assessed to the settlor the income for the latter period as well as $408.53 representing two installments of New York State income taxes which had been paid by the trustee prior to June 19, at a time when the trust was revocable, and claimed as a deduction in her return.

The income for the period prior to June 19, 1934, was taxable to the settlor under the provisions of Section 166 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 166, and, as we have already said, the propriety of thus taxing it has not been questioned. The income for the remainder of 1934 was, in our opinion, likewise taxable to the settlor under the rule promulgated by the Supreme Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. After he had provided for the termination of the trust on January 1, 1937, its duration became limited to a period which under any circumstances would be less than three years, the reversion would be at all times vested in him and the income would remain in the family. While the trustee was not, as in Helvering v. Clifford, the settlor himself, yet the settlor retained a control over the corpus for, under Article Second of the Trust Deed, he could require his wife to sell securities held in the trust and to purchase others as he might direct. In addition to this he was given power to appoint a successor-trustee in the event of the death or resignation of his wife and the refusal of Kemp to accept appointment in her place. The contingent beneficial interest of the nephew in the income of the trust is a variant that was not found in Helvering v. Clifford, but a nephew, whose education and maintenance the taxpayer had been responsible for for many years, must be regarded as "in the family" even though he was not a member of the settlor's household. As was said by Douglas, J., in Helvering v. Clifford, 309 U.S. at page 335, 60 S.Ct. at page 557, 84 L.Ed. 788: "We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact."

We have just discussed the questions now before us in our opinion in Commissioner of Internal Revenue v. Barbour, 2 Cir., 122 F.2d 165, filed July 26, 1941, in which we held that Helvering v. Clifford required the settlor of a trust for a short term to pay the tax on the income, though neither he nor any member of his family was trustee and though he was given no specific control over investments while the trust continued. The liability of the present taxpayer would seem to be still clearer.

The income in question is taxable to the grantor under Section 22(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 669. Accordingly, the decision of the Board is reversed with directions to reinstate the deficiency determined by the Commissioner.